# In the United States Court of Federal Claims

No. 10-811C
(Filed: June 1, 2011)
**NOT FOR PUBLICATION**

```
* * * * * * * * * * * * * * * *
                               *
DARLENE W. LOW,                *
                               *
              Plaintiff,       *
                               *
v.                             *
                               *
THE UNITED STATES,             *
                               *
              Defendant.       *
                               *
* * * * * * * * * * * * * * * *
```

**O P I N I O N**

This case involves the alleged breach of an August 2000 settlement agreement in a prior suit for gender discrimination entered into by the plaintiff, Darlene Low, and the defendant, the United States ("government"). Pending before the court is the government's motion to dismiss the present complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction. For the reasons that follow, because the plaintiff's claim was barred at the time of filing due to a pending claim pursuant to 28 U.S.C. § 1500, the government's motion is **GRANTED**.

## I. BACKGROUND

### A. History of the 2000 Settlement Agreement

The following facts are taken from the allegations set forth in the complaint.

Ms. Low is an employee of the Southwestern Power Administration ("SWPA"), a federal agency within the Department of Energy ("DoE") in Tulsa, Oklahoma. Ms. Low has been a federal employee since 1976 and an employee of the SWPA since 1989, where in 1994 she was promoted to a GS-13 Safety and Health Manager.

In 1999, Ms. Low filed a lawsuit against the government for gender discrimination, including alleged failure to promote and a lack of career opportunities. In August 2000, Ms. Low and the government entered into a settlement agreement, which promised to provide Ms. Low with a GS-14 position as full settlement and satisfaction of her claims. The settlement agreement states, in relevant part:

> Defendant will, through proper channels, structure a new GS-14 position to be filled by Plaintiff. In order to effectuate such, Defendant will create a new GS-13/14 position entitled Special Assistant for Environmental, Safety and Health. Plaintiff will fill such position effective October 8, 2000, as a grade GS-14. Plaintiff agrees to attend training during the month of October 2000, of up to twenty-four hours class time, on environmental laws and regulations compliance as identified by Defendant.

Compl. Ex. 1 at 3.

Thereafter, Ms. Low filled a position entitled Special Assistant for Environmental, Safety and Health, and since 2000 Ms. Low has received a GS-14 level salary. In August 2007, the SWPA removed the environmental duties from Ms. Low's position. Ms. Low

complained, and in 2009, an Equal Employment Opportunity ("EEO") investigation took place relating to the removal of the environmental duties. During that investigation, Ms. Low's supervisor testified that Ms. Low's duties, with or without the environmental duties, were below the GS-14 level. In February 2009, the head of the SWPA admitted under oath to telling Ms. Low that she could be doing secretarial duties and still be a GS-14. Other witnesses also stated that Ms. Low's duties were less than a GS-14 (plaintiff's expert witness in the EEO case classified Ms. Low's position with or without the environmental duties as a GS-12; Ms. Low's supervisor stated under oath he had been told by employees in the personnel department that Ms. Low did not grade out at a GS-14; and SWPA's Director of Human Resources stated under oath that Ms. Low's position does not qualify as a GS-14 when graded against the classification standard). On July 29, 2010, a desk audit performed by the Office of Personnel Management determined that Ms. Low's duties graded at a GS-13.

### B. History of Litigation

#### 1. Ms. Low's District Court Case and Appeal

This case is the latest in a series of cases before this court and the United States District Court for the Northern District of Oklahoma arising from the same 2000 settlement agreement. On June 23, 2009, Ms. Low filed a suit against the Secretary of Energy in the Northern District of Oklahoma. See Low v. Chu, No. 09-398 (N.D. Okla. June 23, 2009). Ms. Low alleged that the SWPA had violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA") and had breached the 2000 settlement agreement by removing environmental duties from her position and failing to give her duties at a GS-14 level. Id.  On September 23, 2009, Ms. Low filed an amended complaint. See Def.'s Mot. App. A.  The amended complaint removed the initial claim of breach of the settlement agreement.  However, Ms. Low continued to allege in connection with her Title VII and ADEA claims that the SWPA failed to provide her with GS-14 level duties as required by the 2000 settlement agreement and wrongfully removed her environmental duties in 2007.  Id. at ¶¶ 3, 11, 24, 26, 28, 31, 43-45.  Specifically, in Ms. Low's first claim for relief in her amended complaint, titled "First Retaliation Claim for Relief, Title VII, Retaliation, Immediate and Deceptive Non Implementation of Settlement Agreement Continuing Violation," she alleged:

> [A]n adverse employment action occurred when at least three of Defendant's high ranking employees, including the Agency Head, deceived [Ms. Low] by creating a position, but a lower level than required, which essentially was only the addition of more technical duties, fully unknown to [Ms. Low], thus depriving her of the opportunity to gain necessary experience to achieve a GS-15 position and be accepted into SES training.

Id. at ¶ 31.  In Ms. Low's third claim for relief in her amended complaint, titled "Third Retaliation Claim for Relief, Title VII, Retaliation Removal of Specific Duties as Agreed to in 2000 Settlement Agreement Continuing Violation," she alleged that "an adverse employment action occurred when Defendant unilaterally removed the environmental duties given to [Ms. Low] as part of her settlement agreement in 2000."  Id. at ¶ 43.  In

decisions dated January 8, 2010 and February 8, 2010, the district court dismissed certain of Ms. Low's claims for lack of jurisdiction.[1]  In a decision dated November 16, 2010, the district court granted summary judgment to the government on the remainder of Ms. Low's claims.

On December 13, 2010, Ms. Low filed a notice of appeal in the Tenth Circuit, including appeals from the January 8, 2010, February 8, 2010, and November 16, 2010 orders and final judgment of the district court.  See Notice of Appeal, Low v. Chu, No. 10-5165 (10th Cir. Dec. 13, 2010).  On February 7, 2011, Ms. Low filed her opening brief in the Tenth Circuit.  In that brief, she has excluded from the legal issues for appeal the SWPA's failure since 2000 to provide the plaintiff with GS-14 level duties.  See Pl.'s Resp. 11, Br. for Appellant/Petitioner, Low v. Chu, No. 10-5165 (10th Cir. Feb. 7, 2010) ("Appellant/Petitioner's Br.") (noting that "Low was rightly unsuccessful in having 2000 breach claims considered in the lawsuit" and requesting that "All Claims, except the 2000 claim should be reinstated").  The Tenth Circuit has not yet ruled in that case.

### 2. Ms. Low's Previous Complaint in the Court of Federal Claims

On August 13, 2009, Ms. Low filed a complaint in this court similar to the present

---

[1] Ms. Low's first claim for relief, based on the government's failure to provide her with GS-14 level duties from the time of the 2000 settlement agreement, was dismissed by the district court on January 8, 2010 for lack of subject matter jurisdiction because of her failure to file an informal charge with an EEO counselor prior to bringing a complaint in district court.  See District Ct. Op. & Order, Low v. Chu, No. 09-398 (N.D. Okla. Jan. 8, 2010).  Ms. Low's third claim for relief, based on the government's removal of her environmental duties, was dismissed by the district court as untimely on February 8, 2010.  See District Ct. Op. & Order, Low v. Chu, No. 09-398 (N.D. Okla. Feb. 8, 2010).

complaint, alleging in part breach of the 2000 settlement agreement, as well as a notice of her directly related claim in the district court. See Low v. United States, 90 Fed. Cl. 447, 450 (2009).[2]  The court dismissed her complaint on December 7, 2009 pursuant to 28 U.S.C. § 1500,[3] because the claims pending before the district court arose from the same operative facts (and sought the same relief) and the district court had not yet issued a final

---

[2] The court described the facts in that case as follows:

> Ms. Low is an employee with the Southwestern Power Administration ("SWPA"), a federal agency within the DOE. (Compl. ¶ 1.) In 1999, Ms. Low filed suit against the Secretary of Energy pursuant to Title VII of the 1964 Civil Rights Act alleging gender discrimination. Id. at ¶ 2. Prior to the scheduled trial, Ms. Low and the DOE entered into a settlement agreement whereby the DOE offered Ms. Low a GS-14 position in exchange for dismissal of her claims. Id. at ¶¶ 3-4. In connection with the settlement, the DOE added certain environmental duties to Ms. Low's position. Id. at ¶ 4. Ms. Low performed these additional environmental responsibilities for a period of seven years after entering into the settlement agreement. Id. at ¶ 6.
>
> In April 2007, Ms. Low's supervisor began transferring Ms. Low's environmental duties to a younger female employee. Id. ¶ 14. As a result of the removal of these duties, Ms. Low filed an Equal Employment Opportunity ("EEO") complaint on August 28, 2008, asserting discrimination and breach of the 2000 settlement agreement. Id. at ¶ 31. During the course of the EEO investigation, Ms. Low learned that even with the additional environmental duties, she had not been operating at a GS-14 level. Id. at ¶¶ 34-36. After the DOE issued a final agency decision finding no evidence of discrimination, Ms. Low filed her complaint in this Court on August 13, 2009, asserting that the DOE breached the 2000 settlement agreement and committed fraud against Ms. Low. Id. at ¶ 33, 39. Ms. Low also alleges that the DOE breached the implied covenant of good faith and fair dealing and committed a tortious interference with contract. Id. at ¶¶ 41-42. Ms. Low had filed her district court action in the Northern District of Oklahoma on June 23, 2009.

Low, 90 Fed. Cl. at 450.

[3] "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500 (2006).

decision at the time she filed in this court.  See id. at 452-53.

### 3.  Ms. Low's Present Complaint in the Court of Federal Claims

On November 22, 2010, less than a week after judgment was entered in the district court case, Ms. Low filed the present complaint, alleging that the government was required by the terms of the 2000 settlement agreement to provide her with duties commensurate with a GS-14 position to make up for lost career opportunities.  Compl. ¶¶ 11, 31.  Ms. Low alleges that the agency intentionally breached the agreement by failing to provide her duties sufficient to lift her position to a GS-14 level and thereafter deceptively concealed its breach until the 2009 EEO investigation by "falsely certif[ying]" her position at the GS-14 level.  Id. at ¶¶ 9, 11, 13, 17.  Ms. Low alleges that she was unaware until February 2009 that her duties were never sufficient to reach the GS-14 grade level, a fact she discovered during the EEO investigation.  Id. at ¶ 6.  Ms. Low alleges, based on the career advancement of others at SWPA, that were it not for the agency's failures, she would have been promoted to a GS-15 by 1996 and currently be a member of the Senior Executive Committee.  Id. at ¶ 32.  Ms. Low further alleges that she has suffered lost salary and benefits in the amount of $75,000.  Id.  She seeks recovery of this amount, plus costs, attorney fees, appropriate injunctive relief to "place her at the GS-14 level promised to her in 2000 by [DoE] and normal progression," and injunctive relief to "modify[] managerial behavior at SWPA" to prevent further violations.  Id.

On January 21, 2011, the government filed a motion to dismiss the plaintiff's

complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), arguing that (1) the plaintiff's claim was pending in another court at the time the present complaint was filed because the plaintiff's time for appeal had not yet run on her claims before the district court, and therefore this court must again dismiss the plaintiff's complaint pursuant to 28 U.S.C. § 1500; (2) the contract in question is not money-mandating and therefore its alleged breach is not subject to this court's jurisdiction; and (3) the claim for breach of contract was filed more than six years after the date of accrual and therefore is time-barred pursuant to 28 U.S.C. § 2501.[4]  In the alternative, the government argues that the plaintiff has not shown that she is entitled to damages for the government's alleged breach of the 2000 settlement agreement because she has been receiving GS-14 level salary from the time the settlement agreement went into effect, and therefore her complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).

The court has reviewed the complaint and the parties' briefs and determined that oral argument is not necessary.

## II. DISCUSSION

### A. Standard of Review

When a party has moved to dismiss for lack of subject matter jurisdiction, the

---

[4] Under section 2501, "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2006).

alleged facts in the complaint are viewed as true and are construed in the light most favorable to the complainant.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (the court must "assume all factual allegations to be true and . . . draw all reasonable inferences in [the] plaintiff's favor"). "[I]f the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate."  Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002) (citing Scheuer, 416 U.S. at 236).  The plaintiff bears the burden of establishing by a preponderance of the evidence the facts sufficient to invoke the court's jurisdiction.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citation omitted).  The court may also look beyond the pleadings and inquire into jurisdictional facts to determine whether jurisdiction exists.  Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

**B. The Plaintiff's Complaint is Again Barred by 28 U.S.C. § 1500**

The government contends that the plaintiff's complaint must again be dismissed by this court under 28 U.S.C. § 1500 because at the time the present complaint was filed the plaintiff's time for appeal had not yet run on her claims before the District Court for the Northern District of Oklahoma, and therefore the same claim was still "pending" in district court.  The government contends, and the plaintiff does not dispute, that the claims pending before the district court arose from the same operative facts and even requested the same relief before both courts.  In response, the plaintiff argues that her

case was not "pending" for the purposes of section 1500 because after this lawsuit was filed and after her appeal was subsequently filed in the Tenth Circuit, the plaintiff decided not to appeal the breach of settlement agreement claims, and therefore there are now no breach of settlement agreement claims pending before any other court. The government argues in response that the operative time for determining whether a claim is "pending" for the purposes of section 1500 is the time at which the plaintiff files the complaint. Thus, the government contends, because the time for appealing the plaintiff's claims before the district court had not yet run, the plaintiff's claims were still "pending" for the purposes of section 1500 at the time this complaint was filed. The government concludes that this court must dismiss the plaintiff's complaint for lack of subject matter jurisdiction just as this court previously did the plaintiff's previously filed case in this court. See Low, 90 Fed. Cl. at 456. The court agrees with the government.

The Tucker Act establishes this court's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the court's jurisdiction is limited by 28 U.S.C. § 1500, in circumstances in which a plaintiff's claim is already pending in another court. Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any

> other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in any respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Id.  The Supreme Court has recently ruled that the Court of Federal Claims ("CFC") lacks jurisdiction to hear a claim pursuant to section 1500 when a plaintiff has filed the same claim in another court prior to filing in this court.  United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1727 (2011) ("The rule is more straightforward than its complex wording suggests.  The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.").  In Tohono O'Odham Nation, the Supreme Court has further clarified that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." Id. at 1731.  There is no question that the plaintiff's claim in this case arises from the same operative facts – the SWPA's alleged failure since 2000 to provide the plaintiff with GS-14 level duties and removal of her environmental duties in 2007 – as her case filed in the District Court for the Northern District of Oklahoma.  The sole issue in this case is whether the present case was filed while her earlier-filed case was still "pending."

Whether another claim is "pending" for purposes of section 1500 is determined "at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994).  If the court determines that the plaintiff had a pending

claim in another court that arises out of the same operative facts when it filed its complaint in this court, then this court must dismiss the plaintiff's later-filed claim for lack of jurisdiction.

Whether a claim is pending for the purposes of section 1500 when the time for appeal has not yet run in an earlier filed case was recently addressed by this court in Vero Technical Support, Inc. v. United States, 94 Fed. Cl. 784 (2010), and Jachetta v. United States, 94 Fed. Cl. 277 (2010). In both of those cases the court held that the plaintiff's case was still pending where the period of appeal had not yet expired. As the court in Jachetta explained, a case has been found to be "pending" in other statutory contexts by the Supreme Court until a judicial process has "achieved final resolution" through post-judgment procedures. Jachetta, 94 Fed. Cl. at 283 (citing Carey v. Saffold, 536 U.S. 214, 219-20 (2002)[5]); see also Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 227 (1995)

---

[5] In Carey, the Supreme Court considered the definition of the word "pending" as used in 28 U.S.C. § 2244, which governs the timing of federal habeas corpus appeals with regard to the state conviction process, and requires that a state prisoner seeking federal habeas corpus relief must file a federal petition within one year after the state conviction has become final. The statute provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The Supreme Court considered whether "pending" included the time between a lower court's decision and the filing of a notice of appeal to a higher state court. Carey, 536 U.S. at 217. The state of California (the appellant in the action) argued that an application for state collateral review is not pending in the state court during the interval between the lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) because the petition is not under court consideration during that period. The Supreme Court rejected this position, explaining in part as follows:

> California's reading of the word "pending" . . . is not consistent with that word's ordinary meaning. The dictionary defines "pending" (when used as an adjective) as

(explaining that implicit in Article III is a "distinction between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed)" and that "the decision of an inferior court is not (unless the time for appeal has expired) the final word of the [judicial] department as a whole."). The court in Jachetta further explained that this reading of "pending" is consistent with section 1500. Jachetta, 94 Fed. Cl. at 283. Accordingly, the Jachetta court held that when conducting a section 1500 analysis, a suit is "pending" until there has been a "final adjudication on appeal or until the time for appeal has run." Id. In so holding, the Jachetta court reasoned as follows:

> By commencing a suit in the district court, plaintiff engaged a process that carries with it a right to an appeal. . . . So long as that right remains exercisable, the process of which it is a part is properly regarded as pending. To read section 1500 in the narrower sense that plaintiff urges – i.e., to regard a suit as pending only when its merits are under active consideration by a court – is to deny the United States the full protections afforded by the statute by allowing a plaintiff to postpone an appeal until after the filing of the same cause of action in this court. That is, of course, the situation present here. We do not believe, however, that Congress could possibly have intended section 1500's reach to be so easily evaded by a litigant's strategic filing.

---

"in continuance" or "not yet decided." Webster's Third New International Dictionary 1669 (1993). It similarly defines the term (when used as a preposition) as "through the period of continuance . . . of," "until the . . . completion of." Ibid. That definition, applied in the present context, means that an application is pending as long as the ordinary state collateral review process is "in continuance" – i.e., "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

Carey, 536 U.S. at 219-20.

Jachetta, 94 Fed. Cl. at 283 (internal citation omitted).  Following the analysis in Jachetta, the court in Vero also held "[t]he right to an appeal, if still available and not renounced by plaintiff, is part of an ongoing suit or process initiated by plaintiff in the District Court, for which reason, plaintiff's claim is still 'pending' for purposes of a section 1500 analysis." Vero, 94 Fed. Cl. at 795.  This court agrees with the reasoning in these decisions.[6]

In this case, the court finds the plaintiff's claims in the earlier-filed action in district court to have been "pending," for purposes of 28 U.S.C. § 1500 when this action was filed on November 22, 2010.  At that time, the right to an appeal was still available and not renounced by the plaintiff.  Indeed, on December 13, 2010, the plaintiff filed a notice of appeal in the Tenth Circuit, including appeal from each of the orders dismissing the plaintiff's claims.  See Notice of Appeal, Low v. Chu, No. 10-5165 (10th Cir. Dec. 13, 2010).  It was not until after the government filed its motion to dismiss this case, on January 21, 2011, that the plaintiff filed her opening brief in the Tenth Circuit, on February 7, 2011.  At that time, she attempted to exclude from the legal issues for appeal the SWPA's failure since 2000 to provide the plaintiff with GS-14 level duties.  See Pl.'s Resp. 11; Appellant/Petitioner's Br. 12, 21, 73 (noting that "Low was rightly unsuccessful in having 2000 breach claims considered in the lawsuit" and requesting that "All Claims,

---

[6] It is for these same reasons as well that the court respectfully disagrees with the court in Young v. United States, 60 Fed. Cl. 418, 425 (2004) (concluding that "once a claim is dismissed or denied, it is no longer pending in another court, for purposes of Section 1500, until a motion for reconsideration or notice of appeal is filed.").

except the 2000 claim should be reinstated"). However, the operative facts of plaintiff's claims, as explained in her "Statement of the Facts" in that brief, continue to originate from the 2000 settlement agreement with the SWPA. See Appellant/Petitioner's Br. 13 ("Litigation Settlement in 2000 is Origin of Case"). As the court stated in Jachetta,

> To read section 1500 . . . to regard a suit as pending only when its merits are under active consideration by a court – is to deny the United States the full protections afforded by the statute by allowing a plaintiff to postpone an appeal until after the filing of the same cause of action in this court. . . . We do not believe, however, that Congress could possibly have intended section 1500's reach to be so easily evaded by a litigant's strategic filing.

Jachetta, 94 Fed. Cl. at 283. Accordingly, the court finds that at the time this complaint was filed the plaintiff had a "pending" claim within the meaning of section 1500 arising out of the same operative facts as this later-filed claim. This holding "precludes the CFC from exercising jurisdiction over the [plaintiff's] suit while the [earlier-filed] case is pending" and therefore this court must dismiss the plaintiff's later-filed claim in this court for lack of jurisdiction. Tohono O'Odham Nation, 131 S. Ct. at 1731.[7]

---

[7] Having found that jurisdiction over the plaintiff's complaint was barred by a pending action pursuant to 28 U.S.C. § 1500, the court does not reach the government's additional jurisdictional arguments that the plaintiff's complaint is time-barred under 28 U.S.C. § 2501 and that the contract in question is not money-mandating. The court also does not reach the government's alternative argument that the plaintiff has not shown that she is entitled to damages for the government's alleged breach and therefore has failed to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).

## III. CONCLUSION

For the above-stated reasons the government's motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge
